Gunwald Moseid, Individually and in a Representative Capacity Upon Behalf of Each Member of a Class of Persons, Firms or Corporations Consisting of Persons, Firms or Corporations Who Have Since October 1, 1963, Been, or Who May Hereafter Be: (a) Named as a Defendant in a Proceeding in the Circuit and Superior Courts of Cook County, or Any Department or Division Thereof; (b) Required, Individually or Through an Attorney To File an Appearance in Such Proceeding; and (c) Required To Pay a Library Fee Imposed Under an Act in Relation to the Establishment, Maintenance and Operation of County Law Libraries Approved May 5, 1961, Plaintiff-Appellant, v. Joseph J. McDonough, as Clerk of the Circuit Court of Cook County, and Bernard Korzen, as County Treasurer of Cook County, Defendants-Appellees.

Gen. No. 50,694.

First District, Fourth Division.

November 27, 1968.

Kenart M. Rahn, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Edward J. Hladis, Chief of Civil Division, Ronald Butler, Assistant State's Attorney, of counsel), for appellees.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Plaintiff appeals from an order dismissing his cause of action. Suit had been filed by plaintiff individually and as representative of a class, challenging the validity of the County Law Library Act and the collection of a $1 library fee from each defendant who filed an appearance in civil cases. The cause was submitted for the trial court's decision on the pleadings and stipulations of fact.

On May 5, 1961, the statute in question was enacted, relating to the establishment, maintenance, and operation of County law libraries. As amended in 1963, it applied to Cook County. Ill Rev Stats (1963), c 81, § 81. Thereafter, the Chairman of the County Board of Cook County duly notified the Clerks of the Circuit and Superior Courts of Cook County that the County Board had acted under the provisions of the statute to establish and maintain a law library. The clerks of the courts of record of

Cook County then began to impose a County law library fee.

Beginning on or about October 1, 1963, and until January 1, 1964, the Clerks of the Circuit and Superior Courts of Cook County collected a library fee of $1 upon the filing of appearances by each defendant in all civil proceedings, notwithstanding the fact that a like fee had been paid in each instance by the plaintiff. On January 1, 1964, by amendment of the Judicial Article of the Illinois Constitution, the Circuit Court became the sole trial court in Cook County, and, since that date, all such library fees have been collected by the Clerk of the Circuit Court.

On July 21, 1964, a suit was filed against Gunwald Moseid, plaintiff in the instant case. Upon filing that case, the plaintiff therein paid to the clerk a $1 County library fee. Thereafter, the plaintiff here, Moseid, attempted to file his appearance as defendant in that case. In addition to the usual $5 appearance fee, the clerk demanded of him a $1 County law library fee, which was paid under protest.

As of August 31, 1964, the library fund totaled $208,888, representing library fee payments collected by the Clerks of the Superior and Circuit Courts of Cook County from both plaintiffs and defendants. A temporary injunction was issued in this case, pursuant to which the library fees collected from defendants have been segregated from those fees collected from plaintiffs, and defendants in this case were directed to hold the fees collected from defendants subject to further order of court.

On the merits of the case, the trial court, basing its decision on the complaint, answer, and stipulations of fact, found for the defendants and entered an order accordingly, including the dissolution of the temporary injunction. On appeal, plaintiff claims:

(1) The proceeding was properly filed as a class action;

(2) The library fees were collected before a library was established by the County Board within the meaning of the statute;

(3) The statutory authorization of the collection of a library fee from defendants is unconstitutional as requiring the purchase of justice;

(4) The statute does not authorize collection of the library fee from defendants; and, finally,

(5) Litigation defendants, as represented by plaintiff herein, are entitled to refund of the library fees which they have paid.

██ (1) Turning, first, to the issue of whether this is a proper class action, the test to be applied is the existence of a community of interest in the subject matter and a community of interest in the remedy among all who make up the purported class. Cohon v. Oscar L. Paris Co., 17 Ill App2d 21, 149 NE2d 472; Johnson v. Halpin, 413 Ill 257, 108 NE2d 429; Harrison Sheet Steel Co. v. Lyons, 15 Ill2d 532, 155 NE2d 595; Smyth v. Kaspar American State Bank, 9 Ill2d 27, 136 NE2d 796; Flanagan v. City of Chicago, 311 Ill App 135, 35 NE2d 545. Factors to be considered in applying this test are: whether the claims of all members of the class share a common question of law and fact, such as the existence of a common fund from which relief can be given (Kimbrough v. Parker, 344 Ill App 483, 486, 101 NE2d 617; Flanagan v. City of Chicago, 311 Ill App 135, 160, 35 NE2d 545); whether the causes of action of the members of the class arise from the same transaction (Peoples Store of Roseland v. McKibbin, 379 Ill 148, 154, 39 NE2d 995; Material Service Corp. v. McKibbin, 380 Ill 226, 236, 43 NE2d 939); whether one party can adequately represent the rights and interests of all other mem-

bers of the purported class (Newberry Library v. Board of Education, 387 Ill 85, 90, 55 NE2d 147); whether the number of possible class members renders separate litigation impossible or impractical (South East Nat. Bank of Chicago v. Board of Education, 298 Ill App 92, 114, 18 NE2d 584); and whether there exists a purely equitable cause of action (Fetherston v. National Republic Bancorporation, 280 Ill App 151, 160).

Defendants in this suit attack the class action on the basis that there is no common fund, that the transactions were separate, and that there was no community of interest. Citing Peoples Store of Roseland v. McKibbin, 379 Ill 148, 39 NE2d 995, and Material Service Corp. v. McKibbin, 380 Ill 226, 43 NE2d 939, they claim that plaintiff has no community of interest, with others of the purported class, in either a fund or a right of recovery. Those cases, arising under the Illinois Retailers' Occupation Tax (Ill Rev Stats (1939), c 120, § 440 et seq.), are distinguishable, however, on the basis that none of the purported class members there, with the exception of the plaintiff in each suit, had paid any money under the section relating to payment under protest; so the taxes on which refunds were sought had been turned over to the State Treasurer without restriction and deposited in the general fund of the State of Illinois. Thus, there was no fund in being in those cases, whereas, in the present case, the County Law Library Act establishes a separate "County Law Library Fund." Further, as mentioned above, the trial court ordered the additional segregation of law library fees collected from litigation defendants. Each member of this plaintiff's alleged class has an identical interest in this fund on account of having paid in $1 for each appearance as a defendant in a civil suit.

Similarly, defendant cites Newberry Library v. Board of Education, 387 Ill 85, 55 NE2d 147, for the proposition that in the instant case there is not sufficient joint

28

 

or common interest in the subject matter to constitute a proper class of claimants, since each payment of a library fee by members of the purported class constituted a separate transaction. In the Newberry Library case, supra, suit was brought to recover unpaid interest on refunding bonds. The trial court dismissed the complaint on the defendant's motion, for the reason that a prior suit (Delevitt v. Board of Education) brought by a single bondholder of the same issue, had been a proper class suit and that the Newberry Library was bound thereby, having been a party to that suit by representation. The Supreme Court reversed, holding that there was no common right of recovery, the claims being based on separate transactions, and there being no common fund out of which recovery could be had. In the present situation, the Newberry Library case is distinguishable, since here there is a common origin of claim, and a fund from which common recovery for the class may be had. Also, the complaint here asks for a declaratory judgment to stop a continuing violation of rights held in common.

Although plaintiff relies heavily on the number of parties making up the class interested in the collection of library fees from defendants (about 150,000) and the impossibility of joining all in one suit, the other requisites for a class action are also present. There is a community of interest in the subject matter since the identical claim of each member of the class, arising from identical circumstances, raises the same issues of law and fact. There is also a community of interest in the remedy since there is an identical claim for refund by each class member against the "special fund known as the county law library fund." In Johnson v. Halpin, 413 Ill 257, 108 NE2d 429, a class action was brought by plaintiff seeking both a declaratory judgment that the Illinois Cigarette Use Tax Act was unconstitutional and an injunction preventing the enforcement of the act against the plaintiff and his class. The plaintiff had purchased

cigarettes from Indiana by placing an order in the mail at Chicago and prepaying the price and the postage. The cigarettes had been received and used without the Illinois cigarette tax stamp having been affixed. The class of individual purchasers of cigarettes for their own use, from out-of-state vendors, were held to have a common interest in the constitutionality of the statute, the result affecting them identically, and all being subject or not subject to the enforcement of the law. The class action was held to have been properly brought. In numerous other cases challenging the validity of statutes and ordinances, or their application to a certain group of people, class actions have been successfully maintained. E. g., Ives v. City of Chicago, 30 Ill2d 582, 198 NE2d 518; Crane Const. Co. v. Symons Clamp & Manufacturing Co., 25 Ill2d 521, 185 NE2d 139, and Harrison Sheet Steel Co. v. Lyons, 15 Ill2d 532, 155 NE2d 595.

■ (2) Plaintiff contends that the Clerk of the Circuit Court exceeded the power granted to him in the County Law Library Act by collecting law library fees before the library was actually in existence. Although now mooted as to current fee collections by the actual existence of the Cook County Law Library, the question remains as to the funds collected before the library was opened for use by the public. Reference is made to the following language of the act:

> The expense of establishing and maintaining such library shall be borne by the county. To defray such expense, in any county having so established such a county law library, the clerks of all trial courts of record located at the county seat of government shall charge and collect a county law library fee of $1.00, . . . . (Ill Rev Stats (1963), c 81, § 81.)

Plaintiff urges that the county alone must bear the cost of establishing and maintaining the library, and it is

30

authorized to begin collecting fees from litigants only after the library is a functioning institution. This interpretation requires too narrow and unnatural a meaning for the term, "establish." While there are numerous dictionary definitions of the word, many of them would substantiate the "establishment" of the library on September 30, 1963, with the enactment of the County ordinance purporting so to do. The execution or implementation of the ordinance occurred somewhat later, but, in our opinion, the library was established by the act of the County Board, not by the acts of its purchasing agent, librarian, etc. "We the People of the United States" did "ordain and establish" the Constitution upon its ratification by the Conventions of nine States, which took place by midyear of 1788, although the election of the first President did not occur until more than a year later. At that time, according to order of the Constitutional Convention, the Congress and the President were to proceed to "execute" the Constitution.

Specifically, the clerks acted in compliance with the act when they began collection of the fees after the notification from the Cook County Board above referred to. The act directs:

> Each such clerk shall commence such charges and collections upon receipt of written notice from the chairman of such county board that the board has acted under the provisions of this act to establish and maintain such a law library. Ill Rev Stats (1963), c 81, § 81.

 (3) Plaintiff next contends that, as to his class, the County Law Library Act is unconstitutional and void, since it requires one to "purchase justice" in violation of article II, section 19, of the Illinois Constitution. In view of our conclusion as to point (4) below, we need not resolve this argument. We state in passing, nevertheless, that we believe the position to be untenable in the light

of Morrison Hotel & Restaurant Co. v. Kirsner, 245 Ill 431, 92 NE 285. Cf. Williams v. Gottschalk, 231 Ill 175, 83 NE 141. In our opinion, Wilson v. McKenna, 52 Ill 43, is distinguishable.

(4) Turning, then, to interpretation of the statutory language, plaintiff contends that the authority of the Clerk of the Circuit Court under the County Law Library Act is limited to the collection of $1 per case, and does not permit the present practice of collecting $1 from each party to the suit, however many that may be. The pertinent language reads as follows:

> . . . the clerks of all trial courts of record . . . shall charge and collect *a* county law library *fee* of $1.00 *in all civil cases,* such *fee* to be paid for at the time of filing *the first pleading, paper or other appearance filed in such cases.* (Emphasis supplied.) Ill Rev Stats (1963), c 81, § 81.

Defendants, pointing out that the statute does not specify the party from whom the fee is to be collected, contend that all parties can and should be required to pay the library fee. In support of this contention, defendants argue, first, that the legislature contemplated, as a matter of policy, that each litigant would bear an equal burden with all others in meeting the expenses of a County law library. We find no support for this contention in the scheme of the statute. If defendants' interpretation were correct on this point, then the dollar payment made by each litigant would have to be irretrievable. But it is not, since the act provides that library fees are to be assessed as costs, and the burden of paying for the library is thus borne by losing litigants only. Further as to equality of burden, the unsuccessful litigant in a suit involving two parties would ultimately be required to pay a total of $2, whereas the loser in a multiple-party action could be required to pay much more.

The interpretation which we reach on this point is also consistent with the obvious policy of the legislature, elsewhere expressed, that the person who commences litigation should be required to pay, initially, a larger part of the court costs than the person who comes into court involuntarily. See the Fees and Salaries Act (sections 51 and 31.1) which fixes the court costs of defendants in amounts substantially smaller than those of plaintiffs, and in some cases excuses them altogether. Ill Rev Stats (1963), c 53, §§ 51 and 31.1. It is also interesting to note that the Fees and Salaries Act makes it perfectly clear as to what fees are to be paid by what parties, a course which could easily have been followed in the library fee statute if the intention had been to assess the fee in relation to each party rather than in relation to each case.

Next, defendants urge upon us the proposition that if the statute had not been intended to require payment of the library fee by defendants as well as by plaintiffs, then the paragraph of the act which sets forth certain stated exceptions to the fee charge would have specifically excluded all party defendants. We find this reasoning rather circuitous, since the drafters of the statute, had they intended to except all defendants, would have had no need to include defendants among the stated exceptions if defendants had been omitted from coverage in the first place.

On the other hand, it is perhaps unreasonable to expect a logically precise relationship among all parts of a statute, even one contained in a single section of a half-dozen short paragraphs. Thus we do, indeed, find that the paragraph on exceptions lists criminal cases, which could not possibly be construed as included in the basic imposition of a fee "in all civil cases." The full paragraph of exceptions reads:

33

Such fees shall not be charged in any criminal or quasi-criminal case, nor in any matter coming to any such clerk on change of venue, nor in any appeal from any other court, nor in any proceeding to review the decision of any administrative officer, agency, or body. Ill Rev Stats (1963), c 81, § 81.

It can readily be seen that none of these exceptions applies to any kinds of parties, but only to various kinds of cases. We conclude that neither the statutory scheme nor the particular wording justifies defendants' position on this point.

Contrariwise, a close reading of the words used in the statute yields strong support for plaintiff's contention that only one fee was meant to be collected in each case. The words of authorization are to collect *a fee of $1.00* in all civil cases with *such fee* to be paid at the filing of *the first* pleading, paper, or other appearance filed in such cases. It seems to us that the use of the singular term, "a fee," to describe the collection to be made in all cases is significant, absent a clear subsequent direction that it be applied to a responding party as well as to the first pleader. This concept also appears to be fortified by use of the term, "the first" pleading, etc., filed. Again, in their ordinary meaning, the words, "the first" describe only one pleading to be filed in such cases, in the absence of a clear indication to the contrary.

Defendants correctly point out that an "appearance" may be filed by a defendant as well as by a plaintiff, but the doctrine of ejusdem generis goes far to negative the argument which defendants make from that fact. Consideration of the clause, "the first pleading, paper, or other appearance," requires, we believe, a classical application of that doctrine. Which is to say that "where a statute or document specifically enumerates several classes of persons or things and immediately following, and classed with such enumeration, the

34

clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that the persons or things therein comprised may be read as ejusdem generis 'with,' and not of a quality superior to or different from, those specifically enumerated." People v. Capuzi, 20 Ill2d 486, 493, 170 NE2d 625.

Applying this principle to the statute at hand, we interpret the clause to mean: *the first* pleading, the first paper, *or* the first document of whatever kind may constitute the first appearance filed in civil cases. While a plaintiff's appearance would ordinarily be accomplished with the filing of a complaint (his first pleading), this is not necessarily so, and thus the term, "other appearance," need not apply to the appearance of a defendant. Such "other appearance" by a plaintiff is contemplated by section 13 of the Civil Practice Act which declares that actions shall be commenced by the filing of a complaint "unless otherwise expressly provided by statute." Ill Rev Stats (1963), c 110, § 13. At the time pertinent to this case, both replevin and attachment actions were commenced by the filing of an affidavit and bond, while a divorce action (both then and now) may be commenced by the filing of a praecipe. Ill Rev Stats (1963), c 119, § 4; c 11, § 2; c 40, §§ 7a and 7b. These are examples of "other appearances" by a plaintiff.

In some other states, library fees are collected from all parties. We believe, however, that our decision is bolstered rather than weakened by those situations, since the statutes there involved make explicit reference to the persons who must pay the fee. E. g.: Cal Bus & Prof Code, §§ 6320–6326 (West, 1962) ; Rev Code Wash Anno, §§ 24.070, 27 (1964).

Bearing in mind the disjunctive form of the clause in question, its application to the first paper filed in the case, and its position in the statute immediately following the authorization to collect "*a* county law library fee of

$1.00," we find ourselves unable to agree with the trial court's conclusion.

■ (5) Under all the circumstances of this case, the proper remedy is for the trial court to order an accounting of the library fees collected from defendants, and to supervise their refund to the persons entitled thereto. Flanagan v. City of Chicago, 311 Ill App 135, 35 NE2d 545. An appropriate injunction should also be issued.

The judgment of the Circuit Court is reversed and the cause is remanded with directions to proceed in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

McCORMICK, P. J. and DRUCKER, J., concur.