(No. 37776.—)
RAY BAUMGARDT, d/b/a A & B MACHINE SHOP, *et al.*, Appellees, *vs.* THEODORE J. ISAACS, Director of Revenue, *et al.*, Appellants.

*Opinion filed September 27, 1963.*

30

WILLIAM G. CLARK, Attorney General, of Springfield,
(WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA

GROVES, and EDWARD A. BERMAN, Assistant Attorneys General, of counsel,) for appellants.

THOMAS D. SIMMONS, and RALPH S. ZAHM, both of Rockford, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The plaintiffs, thirty-seven machine tool manufacturers operating in the Rockford area, filed a complaint in the circuit court of Winnebago County for a declaratory judgment and injunction against Theodore J. Isaacs as Director of the Department of Revenue and Francis Lorenz as Treasurer of the State of Illinois, seeking to restrain them from taking any steps toward assessing plaintiffs for any taxes under the Retailers' Occupation Tax Act for that business done by plaintiffs described in the complaint.

This complaint involves the question of whether the plaintiffs are engaged in selling tangible personal property at retail, under the Retailers' Occupation Tax Act, or are engaged in service occupations which are not subject to that statute. The acts alleged in the complaint arose prior to the adoption of the Service Occupation Tax Act, (Ill. Rev. Stat. 1961, chap. 120, par. 439 101 *et seq.*) and no question as to their taxability under that act is here presented.

The complaint alleges, among other things, that (1) all plaintiffs are engaged in the business of making tools, dies, fixtures, gauges and special machinery for others; (2) that these items are designed, developed and constructed through the use of special skill and engineering on special order for particular customers to conform to their special methods of manufacture; (3) that the material in this machinery is of inconsequential value when compared with the services of plaintiffs and such raw material varies from one-half per cent of the amount paid by the customer to approximately twenty per cent thereof; (4) that all items so made by plain-

tiffs have use or value, other than salvage value, only to the purchaser; (5) that all sales of such items by plaintiffs are a mere incident in and to the performance of services requiring engineering, artistic designing, developing and constructing skill and ability; (6) that, therefore, plaintiffs are not subject to the Retailers' Occupation Tax Act and are specifically made exempt therefrom by the Department of Revenue's own rules and regulations; (7) that in 1950 the Department of Revenue adopted a regulation known as Rule 3 which provides that the "sellers of machinery, tools, dies, jigs, patterns, gauges and the like to users or consumers incur Retailers' Occupation Tax liability except as specified in paragraph 2 hereof." Paragraph 2 of this Rule provides that where "the purchaser employs the seller primarily for his engineering or other scientific skill to design, develop, construct and produce a special machine, tool, die, jig, pattern, gauge, or other similar item on special order for and to meet the particular needs of the purchaser, and in such a way that the items, when so produced, had use or value (other than salvage value) only to the purchaser and has use or value only for the specific purpose for which such item is produced by the seller for the purchaser, the seller is engaged primarily in a service occupation * * * and does not incur Retailers' Occupation Tax liability * * *."; (8) that notwithstanding the foregoing, the Department of Revenue sent auditors into the offices of certain of the plaintiffs for the purpose of assessing and collecting this tax, and has indicated that it plans to audit all plaintiffs and to assess a tax based upon the gross sales of the aforementioned items; (9) that representatives of the Department of Revenue have stated that said audits and assessments are to be made in disregard of the Department's own rules exempting plaintiffs' activities from taxation, which rules said representatives have stated they are incapable of understanding and applying; and (10) that the imposition of a retailers' occupation tax upon plaintiffs

measured by their gross receipts constitutes the assessment and attempt to collect an invalid and illegal tax from the plaintiffs and would, therefore, deprive plaintiffs of their property without due process of law and will deny them equal protection of the law, all in violation of the State and Federal constitutions.

The defendants filed a motion to strike the complaint and dismiss the suit. The lower court, after hearing arguments of counsel denied defendants' motion to dismiss, upon which defendants elected to stand. The trial court subsequently entered a final decree and injunction against the defendants restraining them "from assessing or attempting to collect from plaintiffs, or any of them, any Retailers' Occupation Tax based upon the gross receipts from their business as described in the complaint in this case." This decree was appealed by defendants directly to this court since the revenue is involved.

In urging reversal of the decree, appellants contend: (1) that the technique employed by several taxpayers seeking a declaratory judgment of nontaxability in a single action involving transactions covering all the business of all the plaintiffs is not authorized by the section 23 of the Civil Practice Act; (2) that plaintiffs are not entitled to injunctive relief where they have an adequate remedy at law under the Administrative Review Act; (3) that plaintiffs have not properly raised any constitutional objection to the tax in question; and (4) that the complaint, because it involves the determination of the taxability of several plaintiffs based upon similar but not identical factual situations, seeks to frustrate orderly administrative and judicial procedure. (This appears to be basically the same point as number two above and will be so treated in this opinion.)

There is considerable doubt as to whether appellants' first contention regarding the joinder of plaintiffs has been preserved on this appeal. In the motion to dismiss the complaint filed below it was asserted: (1) that plaintiffs could

not bring any suit until a final assessment had been issued by the Department of Revenue and that they then had to proceed under the Administrative Review Act; (2) that plaintiffs suit constituted a suit against the State of Illinois prohibited by the Constitution (a point that was not urged on this appeal); and (3) that plaintiffs' complaint did not properly raise any constitutional question. No question as to the misjoinder of parties was raised and appellant did not ask in this or any other motion that designated misjoined parties be dismissed as is specifically required by section 45 of the Civil Practice Act (Ill. Rev. Stat. 1961, chap. 110, par. 45). Ordinarily, therefore, this point could not be raised for the first time on appeal. It does, however, appear that in the oral argument before the trial court this question was considered and that the trial judge denied defendants' motion not only because of his rejection of the points specifically raised therein, but also because he felt that the complaint did present common questions of law and fact as to the taxability of several plaintiffs engaged in similar manufacturing activities and also because in his opinion said action would prevent a multiplicity of suits. We will therefore consider this point as to the propriety of the joinder of the plaintiffs as having been raised, without objection, orally after the filing of defendants' written motion to dismiss.

Section 23 of the Civil Practice Act provides that "Subject to rules, all persons may join in one action as plaintiffs, in whom any right to relief in respect of or arising out of the same transaction or series of transactions is alleged to exist, whether jointly, severally or in the alternative, whenever if those persons had brought separate actions any common question of law or fact would arise * * *." (Ill. Rev. Stat. 1961, chap. 110, par. 23.) The complaint in this case, appellants argue, presents nothing more than separate factual issues of whether the business activities of each plaintiff constitute sales at retail, or on the other hand, whether these activities involve the rendition of services.

In such cases we have stated that, although the general principles are well-settled, "the facts and situations in each case are different, making it difficult to apply in the way of a general group." (*Sterling Steel Casting Co.* v. *Department of Revenue,* 7 Ill.2d 244.) Therefore, appellants further argue, there could exist no common question of fact or law, such as would authorize the joinder of the plaintiffs' separate causes of action in one suit.

The *Sterling Steel* case, however, involved only one plaintiff and consequently no question of joinder of parties was there presented. It has long been the practice in this State, both before and after the enactment of section 23 of the Civil Practice Act, for taxpayers engaged in similar businesses to join together in a single equitable action to restrain the imposition of illegal taxes, (See, *e.g., Beatrice Foods Co.* v. *Lyons,* 12 Ill.2d 274; *Western Photo & Supply Co.* v. *Lyons,* 15 Ill.2d 318; *Mount Carbon Coal & Railroad Co.* v. *Blanchard,* 54 Ill. 240), including taxes allegedly due under the Retailers' Occupation Tax Act where, as in this case, the issue to be decided was whether or not the taxpayers were engaged in service occupations. (See, e.g. *Benson* v. *Isaacs,* 22 Ill.2d 606; *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600.) In rejecting the contention that this procedure rendered a bill in equity multifarious we stated in *Harwood* v. *St. Clair and Monroe Levee and Drainage Co.* 51 Ill. 130, "The complainants have a common interest in the subject matter of the suit. They ask the same relief against the same injury, on the same grounds. To compel each one to file a separate bill would lead to a multiplication of suits wholly unnecessary."

There is no intention expressed in section 23 of the Civil Practice Act to abolish this well-established equitable procedure. In fact, that section is regarded by most authorities as having generally adopted the previous equitable procedure of allowing all plaintiffs seeking relief of the same general character to join in all cases that could be more con-

veniently tried in a single suit, unless the defendant is unreasonably prejudiced thereby. (*Johnson* v. *Moon,* 3 Ill.2d 561; 1 Puterbaugh, Chancery Pleading and Practice, 7th ed., p. 78.) In this manner it was obviously thought that the delay and expense of litigation would be lessened and the bringing, by the separate plaintiffs, of multiple suits discouraged. McCaskill, Ill. Civil Practice Act, Annotated, pp. 41-46.

It is noted that under section 23 two requirements must be met in order to allow the joinder in one suit of several plaintiffs, each with a different cause of action; (1) the various actions must arise out of the same transaction or series of transactions; and (2) they must present some common question of law or fact. It is obvious that through an overly restrictive interpretation of these two requirements it would be possible to totally frustrate the intended policy of allowing a liberal joinder of parties based primarily upon trial convenience. The Civil Practice Act provides, however, that "This Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." (Ill. Rev. Stat. 1961, chap. 110, par. 4.) We will not, therefore, adopt the technical interpretation of section 23 suggested by appellant, but instead will view this complaint in light of the aforementioned remedial objectives that section 23 was intended to accomplish. When so considered the complaint does in our opinion set forth sufficient facts to satisfy both of the above requirements.

It is alleged, and admitted by the defendants' motion to dismiss, that all plaintiffs are engaged in precisely the same type of manufacturing activity and that they all design, develop and construct the products in question in the same manner and for the same purposes. It is also alleged that the Department of Revenue had adopted a uniform course of action calling for the audit of all plaintiffs' businesses, the result of which audits will be to assess all plaintiffs on

the basis of their total gross receipts from the allegedly exempt sales of the products mentioned in the complaint, without regard to whether these sales, or some of them, constitute the rendition of services that are exempt from taxation even under the Department's own rules. Had issues of fact been joined in this case the proof as to all plaintiffs would have centered around the basic issues of whether or not these parties were in the business of supplying special tools, dies, jigs, fixtures, gauges and special machinery on special order to meet the needs of the purchasers, where the seller was employed primarily for his engineering or scientific skill, and, if so, whether they are liable for the retailers' occupation tax. These issues are common to all plaintiffs' cases and it seems inconceivable that there would not be considerable savings in time, expense, and in the simplification of issues by allowing all plaintiffs to join in one suit. In addition such joinder will eliminate the possibility of virtually identical businesses being taxed differently. If, as appellants suggest, problems peculiar to certain individual plaintiffs should develop which would delay or embarrass the trial, the trial court under section 23 has ample power to "order separate trials or enter any other order that may be expedient." (Ill. Rev. Stat. 1961, chap. 110, par. 23.) The plaintiffs were, therefore, in our opinion authorized under section 23 to join together in one suit. See, *Weigend* v. *Hulsh,* 315 Ill. App. 116; *Akely* v. *Kinnicutt,* 238 N.Y. 466; Note, Parties and Joinder of Actions under the Illinois Practice Act, 43 Ill. Rev. Review 41.

Appellants further contend, under the aforementioned points two and four, that the plaintiffs' suit was premature in that they failed to first exhaust their administrative remedies and that as to certain of the plaintiffs no cause of action has been stated since no audit or assessment by the Department of Revenue was alleged to have been made.

In support of these arguments the appellants suggest that the plaintiffs, in contesting taxability under the Retail-

ers' Occupation Tax Act, must wait until a final assessment has been issued and then proceed by one of three statutory methods: (1) by paying the tax under protest and filing a suit for injunction, holding the money in protest funds under section 2a of the act relating to payment of public money into the State treasury (Ill. Rev. Stat. 1961, chap. 127, par. 172,) followed within 60 days by the filing of claims for credit with the Department; or (2) by paying the tax not under protest and filing claims for credit; or (3) by contesting the tax after the Department issues proposed assessments, by protest and requesting hearings. In this way plaintiffs could proceed under the Administrative Review Act. Ill. Rev. Stat. 1961, chap. 110, par. 264, *et seq.*

It has long been acknowledged, however, that a court of equity does have the power to restrain the collection of an improper tax, even though the taxpayers may have other administrative remedies. "The tax in question is one levied against the complainants without warrant of law, and so comes within that class of cases in which we have admitted the jurisdiction of a court of equity to restrain the collection of a tax. * * * It is established that where a tax is unauthorized by law, or where it is levied upon property exempt from taxation, equity will take jurisdiction and enjoin the collection of the tax. This constitutes an independent ground of equitable relief, and in such cases it is not necessary that special circumstances exist to authorize issuing an injunction." *Owens-Illinois Glass Co.* v. *McKibbin,* 385 Ill. 245, 254, 256.

We have also held that because the Retailers' Occupation Tax Act is self-executory, and a taxpayer by simply engaging in a business covered by the act automatically becomes liable for the tax and penalties, it is not necessary that a final assessment be issued prior to commencing a suit seeking injunctive relief. In the *Owens-Illinois Glass Co.* case we stated that there is "no substantial distinction be-

tween the Director of Finance taking a course of action which determines an occupation is taxable, when it is not in fact taxable, and of levying an unauthorized tax. In either event unless the action is restrained the taxpayer is required to pay unauthorized taxes." (385 Ill. at 259) In that case it was the act of the Director in holding that a particular business was taxable, which business was in fact not taxable, that was held to have given rise to a cause of action. The Department of Revenue in this case has taken the position that all the plaintiffs' businesses are, as a general proposition, subject to the Retailers' Occupation Tax Act. This Department for the purpose of assessing a tax upon allegedly tax exempt activity was in the process of sending auditors to all of the plaintiffs' businesses, and had already completed those audits as to certain plaintiffs. Under these circumstances the plaintiffs were in our opinion entitled to commence an equitable action prior to the issuance by the Department of any final assessment and were not required to first pursue their remedies under the Administrative Review Act. Counsel for the appellants, in his reply argument before this court, appeared to similarly recognize that each plaintiff could have, under the *Owens* case, brought a separate suit.

The appellants finally contend that the allegations in plaintiffs' complaint concerning the unconstitutionality of the Department's actions, being in general form, were inadequate to properly raise any constitutional questions. The court's decree provides, however, simply that "the action of Department of Revenue in attempting to collect a Retailers' Occupation Tax from the plaintiffs, or any of them, on * * * their business described in the complaint in this case constitutes the imposition of an erroneous and invalid tax." It is alleged in the complaint that the plaintiffs' activities therein described are exempt from the tax under both the applicable statute and the Department's rules

adopted pursuant thereto, and that notwithstanding these facts the Department has taken steps to assess against the plaintiffs a tax including penalties measured by the receipts from these activities. These allegations are in our opinion sufficient to support the aforementioned finding in the decree regardless of the adequacy of the further allegation that the Department's actions also violate certain specified provisions of the State and Federal constitutions, upon which allegation the decree makes no finding whatever.

No other errors being urged, the decree of the circuit court of Winnebago County is accordingly affirmed.

*Decree affirmed.*