PAUL HELLER, Plaintiff-Appellee, *v.* FERGUS FORD, INC. *et al.,* Defendants-Appellants.

(No. 58373;

First District (4th Division)—November 7, 1973.

William J. Scott, Attorney General, of Chicago, (Fred F. Herzog, Calvin C. Campbell, and Donald S. Carnow, Assistant Attorneys General, of counsel,) for appellants.

L. Louis Karton and Samuel T. Wexler, of Chicago, (Kreger and Karton, Ltd., of counsel,) for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an interlocutory appeal from a temporary mandatory injunction order issued by the Circuit Court of Cook County on November 21, 1972. The plaintiff, Paul Heller, brought this action individually and in a representative capacity on behalf of all those customers of Fergus Ford, Inc., who had bought or will buy automobiles equipped with pollution control equipment. The defendants are Fergus Ford, Inc.; George Mahin, Director of Revenue; Alan J. Dixon, Treasurer of the State of Illinois; and William J. Scott, Attorney General of the State of Illinois.

The issues on appeal are whether the complaint constitutes a proper class action, whether the emission control systems which are a part of

new automobiles are "pollution control facilities" within the statutory purview of the exemptions to the Use Tax and the Retailers' Occupation Tax, whether the temporary mandatory injunction was appropriate under the circumstances of the case, whether the injunction violates the separation of powers clause of Article II, Section 1 of the Illinois Constitution of 1970, and whether the plaintiff must exhaust his statutory administrative remedies before resorting to a court of equity.

The plaintiff alleged he purchased a 1971 Ford automobile in November of 1970 from Fergus Ford, Inc., at a time when there was in existence provisions in the Illinois Use Tax Act and the Retailers' Occupation Tax Act which exempted pollution control facilities from the imposition of the taxes. Because the automobile came equipped with a pollution control emission device, the plaintiff alleges he was entitled to an exemption from the Illinois Use Tax and the Retailers' Occupation Tax to the extent the price of the automobile reflected the cost of the pollution control equipment and that he was illegally denied that exemption.

Plaintiff sought the establishment of a protest fund, an accounting, and the issuance of a bulletin by the Director of Revenue of the State of Illinois to all holders of a Certificate of Registration in the State of Illinois advising them to remit all excess taxes collected from the sale of vehicles having pollution control facilities. The court ordered the issuance of such a bulletin in its temporary injunction order and this appeal was filed by George Mahin, Director of Revenue; Alan J. Dixon, Treasurer of the State of Illinois, and William J. Scott, Attorney General of the State of Illinois. Fergus Ford, Inc., did not appeal.

■■ The first issue we shall consider is whether the complaint constitutes a proper class action. In Illinois the matter of class or representative actions is governed entirely by case law, and the defendants rely on the cases of *Peoples Store of Roseland v. McKibbin* (1942), 379 Ill. 148, and *Newberry Library v. Board of Education* (1944), 387 Ill. 85, for the proposition that there is no community of interest among members of the alleged class because each purchase of a car from Fergus Ford, Inc., was a separate and distinct transaction. In *McKibbin* retailers, selling food to charitable institutions and schools, filed a class action in behalf of all firms in the state engaged in selling food to such institutions, claiming these sales were exempt from the Retailers' Occupation Tax. The court stated at 153-154:

> "In those cases where class litigation has been sustained, all members of the class are found to have a common interest in the questions involved and the results obtained. In the instant cases all retailers of the State engaged in selling food supplies to insti-

tutions of the kind and character to which plaintiffs sold have an interest in having such sales exempted from the tax but the common interest stops there. A decision sustaining their view that no tax is due on such sales does not create any fund from which reimbursement can be made, neither does it establish the existence of a right of recovery in every vendor. Each must make proof as required by section 6 as amended, and in doing so he resorts to his own sales which are wholly independent and unrelated to the sales made by others engaged in the same business and selling to similar institutions. The money wrongfully collected as a tax and held by the State officials is not to be considered as one fund for the benefit of all who had paid taxes which should not have been paid, but the interest of each taxpayer is limited to his own sales. If the plaintiffs, or any of those whom they seek to represent as a class, paid taxes which should not have been paid, then the money in the hands of the defendants was derived from distinct, separate transactions which each vendor had with the institutions to whom they had sold."

In *Newberry* the plaintiff sued on behalf of all those who had purchased identical bonds and who had failed to receive payment of interest for a particular coupon. The court stated that a class action may be brought only where there is a common interest among the members of the class in the question involved, the remedy, and the subject matter of the suit, or where the relationship among the members of the class is such as to legally entitle one member to stand in judgment for the others. The court held that the action was not a proper class suit and emphasized the various bonds had been purchased through entirely separate and distinct transactions. The fact that there had been purchases of identical but separate items from the defendant was held not sufficient to sustain a class action. Also, see *Reardon v. Ford Motor Co.* (1972), 7 Ill.App.3d 338.

In the case at bar the cars were purchased from Fergus Ford, Inc., in separate and distinct transactions. Hence, there was no community of interest in the subject matter. Furthermore, the affidavits submitted by the three major automobile producers establish that many of the transactions were dissimilar in that emission control systems vary from model to model even on automobiles manufactured by the same company. The emission control systems consist of various parts integrated into the operational functions of the engine and do not constitute an entity: some parts serve primarily to control emissions, others incidentally assist in controlling emissions, while others help to restore engine performance de-

graded by emission control. Thus, there is no community of interest among members of the alleged class with respect to remedy because each different system contains dissimilar parts and will not cost the same.

It is also questionable whether one buyer of a specific make, model, and year of automobile can adequately represent the interests of buyers of many different makes, models and years, each of which contain a different assortment of parts with a different degree of integration into the operational functions of an engine. In each case there may well be questions of fact as to whether a particular part is or is not a part of the emission control system.

The plaintiff contends *McKibbin* and *Newberry* have been eroded by later cases and cites *Fiorito v. Jones* (1968), 39 Ill.2d 531, and *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill.2d 532, in support of their position. In each case the court allowed the plaintiff to sue in a representative capacity, but in each case *McKibbin* was specifically distinguished by a finding that, unlike *McKibbin*, there were common factual circumstances present.

■■ In the case at bar we conclude there are different factual circumstances involved in the separate purchases of automobiles containing different equipment. While members of the alleged class have a common interest in determining whether the Illinois Use Tax and the Retailers' Occupation Tax are applicable to certain equipment contained in new automobiles, that alone is not sufficient to maintain a class action. We hold this is not a class action.

We also consider whether the emission control systems installed by the manufacturers of automobiles are exempted as "pollution control facilities" within the meaning of the Use Tax Act and the Retailers' Occupation Tax Act. The language of the exemption to the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, § 439.2a) reads as follows:

> " 'Pollution control facilities' means any system, method, construction, device or appliance appurtenant thereto sold or used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution as the term 'air pollution' or 'water pollution' is defined in the 'Environmental Protection Act,' enacted by the 76th General Assembly, or for the primary purpose of treating, pretreating, modifying or disposing of any potential solid, liquid, or gaseous pollutant which if released without such treatment, pre-treatment, modification or disposal might be harmful, detrimental or offensive to human, plant or animal life, or to property.
>
> The purchase, employment and transfer of such tangible personal

property as pollution control facilities is not a purchase, use or sale of tangible personal property."

■■ An automobile has no function as a pollution control facility and, in fact, is a major contributor to the problem of air pollution. We believe the fact that in the past several years cars are being designed in such a manner as to limit the amount of effluents discharged into the atmosphere is not sufficient basis to qualify any of the component parts as being "pollution control facilities" within the meaning of the act. As we noted above, the affidavits submitted by the automobile manufacturers establish that the emission control devices are fully integrated into the operational functions of the engines. The act states the exemption extends only to property purchased "as pollution control facilities," and we do not believe it was the intention of the legislature that integrated systems can be characterized as such. The plaintiff did not purchase an automobile and a pollution control facility; he purchased only an automobile. Had he purchased an automobile and later purchased an emission system which was then attached to the engine, in our view, that emission system would be exempt from the imposition of taxes because it was being sold as a pollution control facility and not as a part of some other piece of equipment. A product with a primary purpose other than the implementation of environmental quality may not be broken down into its component parts to determine whether any of them separately or in combination may have some benefit to the environment.

■■ We hold emission control systems built in as integral parts of an automobile do not constitute a "pollution control facility" within the meaning of section 439.2a of the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, § 439.2a) or Section 440a of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, § 440a) and are not sold as such.

In light of our determination of the first two issues, we need not consider the other contentions advanced by the defendants.

For these reasons, the judgment of the Circuit Court of Cook County is reversed.

Reversed.

BURMAN, P. J., and JOHNSON, J., concur.