Manuel Rodriguez *et al.*, Plaintiffs-Appellants, *v.* Credit Systems Specialists, Inc. *et al.*, Defendants-Appellees.

(No. 57869;

First District (5th Division)—February 8, 1974.

Wallace C. Winter and Donald T. Bertucci, both of Chicago, for appellants.

Pressman & Hartunian, of Chicago, for appellees.

Altheimer, Gray, Naiburg & Strasburger, of Chicago, for amicus curiae.

Mr. JUSTICE LORENZ delivered the opinion of the court.

Plaintiffs Manuel Rodriguez, Elisa Rodriguez, Luis Rivera and Juan Abrego, individually and as class representatives, filed a lengthy twelve-count complaint against Credit Systems Specialists, Inc. (C.S.S.), and Juan Martin, an employee of that corporation. C.S.S. is engaged in the business of debt pooling and plaintiffs are Spanish-speaking persons having dealings with it. On defendant's motion, the trial court dismissed certain individual and class counts of plaintiffs' complaint: individual counts III, V and VII and class counts VIII, IX, X and XII. Upon the trial court's finding of no just reasons for delaying appeal, plaintiffs appeal from the trial court's order of dismissal.

Plaintiffs contend: (1) that plaintiffs adequately represent the classes in counts VIII, IX, X and XII, (2) that a sufficient community of interest exists in the instant class counts, and (3) that adequate joinder of parties and of causes of action exists among counts I, III, V and VII. The Consumer Federation of Illinois filed an amicus curiae brief supporting plaintiffs' class actions.

Count I of the complaint alleged that Manuel and Elisa Rodriguez, having only a limited understanding of English, visited the offices of

C.S.S. where they met Juan Martin. Martin spoke to them in Spanish, assumed a fiduciary relationship with them, knowingly made certain false representations regarding C.S.S.'s services, knowingly failed to disclose certain material facts, induced them to rely upon him, and convinced them to sign a contract written in English. Martin's representations related to C.S.S.'s payments of plaintiffs' debts and to lower monthly payments to C.S.S. Martin's non-disclosures related to plaintiffs' ability to satisfy their debts, to their contractual obligations upon completion of the contract, to lower monthly payments, to delays in disbursements to creditors, and, to the payment of a pro-rated monthly service charge in the absence of acceptance by their creditors of a plan of payment. Defendants presented no plan of payment and plaintiffs suffered injury from defendants' actions and omissions which violated the Consumer Fraud Act (Ill. Rev. Stat. 1969, ch. 121½, par. 262), the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1969, ch. 121½, par. 312) and the Financial Planning and Management Service Act (Ill. Rev. Stat. 1969, ch. 16½, pars. 262 and 264) and its rules. Plaintiffs sought declarations of fraud, of statutory violations, and of rescission. They also sought an accounting of the amounts of the pro-rated monthly service charges and an injunction against collection and assignment.

Count III, on behalf of Luis Rivera, made allegations and requested relief comparable to count I. It also alleged that Rivera was induced to visit C.S.S. through a television advertisement and that he was persuaded to purchase an insurance policy. Martin's representations related to C.S.S. securing a loan in its own name for Rivera's benefit, to the length of time Rivera was required to make payments, and to the purchase of an insurance policy insuring payments. In addition to the non-disclosures included in count I, the complaint also alleged that Martin failed to inform Rivera regarding Rivera's obligations regarding refinancing and extensions of the contract which increased the amounts due C.S.S.

Count V, on behalf of Juan Abrego, made allegations and requested relief comparable to count III except that no insurance policy was involved. Martin's representations related to C.S.S.'s securing a loan in its name for Abrego's benefit, to lower monthly payments to C.S.S., to opening a savings account for Abrego, and to C.S.S.'s fee. In addition to those non-disclosures included in count III, Martin's non-disclosures to Abrego related to increasing his indebtedness by including non-creditors, such as his landlord, in his list of creditors. Upon discovering defendants' fraud, Abrego notified defendants of the cancellation of his contract.

Count VII, on behalf of all four plaintiffs individually, incorporated by reference the allegations of counts I, III and V and further alleged a great many legal deficiencies in the form contracts which plaintiffs

signed. These deficiencies related to violations of various statutes and of the rules of the Department of Financial Institutions, to ambiguities in terms, to lack of mutuality and to unconscionability. Plaintiffs sought rescission of their contracts, declarations of unconscionability, and injunctions against collection and assignment.

Count VIII is the first class count of the complaint. The four named plaintiffs seek to represent the class of persons living in Cook County who are presently indebted to C.S.S. and who contracted with C.S.S. using the same form contract they had signed. Plaintiffs, in addition to incorporating by reference portions of Count VII regarding the legal deficiencies of the form contracts signed by them, alleged that the members of the instant class were so numerous that a class action was required to avoid a multiplicity of law suits, that common questions of law and fact were involved, and that separate actions could result in inconsistent adjudications. Plaintiffs seek injunctions against collection and assignment and a declaration that C.S.S.'s form contracts are null, void and unconscionable.

In count IX, the four named plaintiffs seek to represent the class of persons who live in Cook County, who speak Spanish and do not understand English, who are indebted to C.S.S., and who signed contracts with C.S.S. which were written in English but negotiated in Spanish. Plaintiffs' other allegations are comparable to those of count VIII relating to the necessity of bringing a class action. Plaintiffs seek injunctions against collection and assignment and a declaration that soliciting and negotiating in Spanish and executing contracts in English is unconscionable.

In count X all the plaintiffs except Juan Abrego seek to represent the class of persons residing in Cook County who entered contracts with C.S.S. and who paid more than one month's service charge to C.S.S. without C.S.S. having prepared a plan of payment acceptable to their creditors. In addition to those allegations comparable to those of count VIII relating to the need for a class action, plaintiffs alleged that C.S.S. violated section 262 of the Financial Planning and Management Service Act (Ill. Rev. Stat. 1969, ch. 16½, par. 262) by taking services fees from the members of the class beyond the period of one month without presenting a plan of payment acceptable to the creditors of the respective class members. Plaintiffs seek an accounting for those service fees, a judgment for the amount of those overpayments together with interest, costs, and attorneys' fees, and injunctions against collection and assignment.

In count XII, all four plaintiffs seek to represent the class of persons residing in Cook County who entered contracts with C.S.S. but because

of C.S.S.'s common scheme and design will be unable to satisfy their obligations and therefore will be required to pay C.S.S. certain other undisclosed service charges. In addition to those allegations comparable to those of count VIII relating to the need for a class action, plaintiffs alleged that C.S.S. purposefully prepared payment schedules which would require plaintiffs and the members of the class to continue to make payments to C.S.S. and to permit C.S.S. to extract additional fees in violation of various statutes. Plaintiffs seek declarations that C.S.S. violated its fiduciary obligations and various statutes, injunctions restraining collection and assignments, and awards of costs and attorneys' fees.

Defendants filed a motion to dismiss counts II through XII of the complaint. Essentially they alleged that the individual counts were improperly joined, that the class counts were not properly class actions, and that plaintiffs could not adequately represent the classes involved. Attached to the motion were copies of plaintiffs' notices of cancellation of their contracts with C.S.S. Also, both parties filed lengthy briefs in the trial court supporting their respective positions and examining various cases. Subsequently, plaintiffs agreed to withdraw counts II, IV, VI and XI of their complaint.

Upon hearing arguments of counsel, the trial court in a written opinion dismissed without prejudice counts III, V and VII as being improperly joined with count I and also dismissed counts VIII, IX, X and XII. The basis of the trial court's dismissal of the class counts was that each member of the class entered into a separate contract with C.S.S. under various circumstances, that the members of the class have no interests in the contracts of the other members of the class, that the court would be required to examine the individual circumstances of each contract, and that no community of interest exists among the members of the class. Furthermore, all of the members of the class cannot be forced to rescind their contracts but may do so if they so desire. The court also determined that plaintiffs could not adequately represent the classes involved since they had cancelled their contracts with C.S.S.

OPINION

■■ Plaintiffs contend that they adequately represent the classes in counts VIII, IX, X and XII of their complaint. One of the requirements of a class action is that the class representatives adequately represent the class. (*Hansberry v. Lee*, 311 U.S. 32, 85 L.Ed 22, 61 S.C. 115.) This requirement normally means that the class representatives must be members of the class they represent. This rule guarantees the diligent representation of the class.

■■ In the instant case, plaintiffs cancelled their contracts with C.S.S. It is clear that plaintiffs are not presently indebted to C.S.S. and there-

fore are not members of the class of persons presently indebted to C.S.S. as required in counts VIII and IX. Also, plaintiffs no longer are obliged to pay C.S.S. any service charges and therefore are no longer members of the class which may have to pay C.S.S. undisclosed service charges as required in count XII. On the basis of plaintiffs' non-membership in the classes indicated in Counts VIII, IX and XII alone, the trial court's decision in dismissing those counts was not error and we need not consider plaintiffs' other arguments regarding those counts.

In count X, however, the existence of a present indebtedness to C.S.S. is not relevant. The class consists of those who have entered contracts with C.S.S. and those who have paid more than one month's service charge to C.S.S. without C.S.S. having prepared the plan of payment required by section 262 of the Financial Planning and Management Services Act (Ill. Rev. Stat. 1969, ch. 16½, par. 262). The three plaintiffs who seek to represent this class meet these two requirements and therefore are adequate class representatives.

■■ Although defendants argued and the trial court agreed that the circumstances relative to count X were separate and unrelated transactions, plaintiffs contend that a sufficient community of interest exists to entitle them to maintain count X as a class action. One of the requirements of maintaining a class action is that a community of interest exist between the members of the class and the class representatives regarding both subject matter and remedy. (*Moseid v. McDonough*, 103 Ill.App.2d 23, 243 N.E.2d 394.) Illinois cases disagree regarding whether a community of interest exists when separate transactions are involved. (*See e.g., Newberry Library v. Board of Education*, 387 Ill. 85, 55 N.E.2d 147; *contra, Fiorito v. Jones*, 39 Ill.2d 531, 236 N.E.2d 698.) However, the better view seems to be that notwithstanding whether separate transactions are involved, the existence of a community of interest must be determined in each case from the nature of the action according to the difficulties of administering justice through the medium of a class action as compared with those involved in separate suits. (*See Perlman v. First National Bank*, 15 Ill.App.3d 784, 305 N.E.2d 236.) We believe class actions are particularly appropriate when separate suits could result in the establishment of inconsistent standards of conduct for the persons opposing the class or when a separate suit could affect the rights of the other members of the class.

■■ In Count X plaintiffs alleged that the members of the class have been overcharged by C.S.S. in the collection of service charges in violation of section 262 of the Financial Planning and Management Services Act. (Ill. Rev. Stat. 1969, ch. 16½, par. 262.) Section 262 provides that:

"In no event shall more than the pro-rated service charge for one

month be payable by the individual unless a plan of payment of his obligations shall have been accepted by a majority in number of the creditors listed in the contract, which majority in number shall also represent a majority of the total amount of the obligations listed as owing to such creditors in the contract."

Although separate contracts with C.S.S. are involved, plaintiffs alleged that all these questions have one matter in common—that C.S.S. overcharged in its service charges. Although certain accounting and administrative problems would undoubtedly be involved in determining the amount and extent of C.S.S.'s alleged violations, we hardly think this burden would be so overwhelming as to preclude a class action on so simple a question as the violation of section 262 when the records indicating such a violation are readily available. On this count, it is highly unlikely that the class action would evolve into a series of individual cases under the guise of a class suit. For this reason, we believe the trial court erred in dismissing count X. However, in addition to seeking an accounting for the overpayments of the service charges, which we think was proper, plaintiffs seek injunctions against collection and assignment of the contracts. Since plaintiffs have no present contracts with C.S.S. this latter remedy would be too extensive.

■■■ Plaintiffs lastly contend that adequate joinder of parties and of causes of action exist among counts I, III, V and VII. Section 23 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 23) provides in relevant part:

"Subject to rules, all persons may join in one action as plaintiffs, in whom any right to relief in respect of or arising out of the same transaction or series of transactions is alleged to exist, whether jointly, severally or in the alternative, whenever if those persons had brought separate actions any common question of law or fact would arise: * * *."

This statute is to be construed with a view toward permitting the liberal joinder of plaintiffs. (*Baumgardt v. Isaacs*, 29 Ill.2d 29, 193 N.E.2d 31.) Liberal joinder of plaintiffs, however, is different from unlimited joinder of plaintiffs with complete disregard of the statutory limitations on such joinder. Those limitations are: (1) that the various actions arise out of the same transaction or series of transactions, and (2) that common questions of law or fact must be involved.

■■ In the instant case, the trial court determined that neither limitation was satisfied in the instant case. Regarding counts I, III and V, the pleadings indicate that although the same defendants were involved, different representations were made and different things were not revealed to each plaintiff. Especially when it is considered that the

contracts were executed at totally different times, it becomes apparent that separate and distinct transactions are involved. Moreover, in the instant case, whether plaintiffs recover depends completely upon the resolution of independent fact questions. Plaintiffs also argue that they should be permitted to join the instant counts because each count is part of a related series of transactions. However, not only is each plaintiff's cause of action set out in an independent count, but no facts are alleged in those counts to justify a finding that a series of separate transactions is involved. Two or three allegations of breaches of fiduciary obligations, without more, do not establish a series of transactions. We believe the facts here are different from those in *Weigend v. Hulsh*, 315 Ill.App. 116, 42 N.E.2d 146.

Count VII of the complaint, based on alleged deficiencies in the contract, was made on behalf of all four named plaintiffs. However, although the same form contract was involved, this count was premised upon the separate and distinct transactions involved in counts I, III and V. The allegations of those counts were incorporated by reference. In these circumstances, we do not believe the dismissal of any of the individual counts was error.

Therefore, the judgment of the circuit court of Cook County dismissing counts III, V, VII, VIII, IX and XII is affirmed. However, the court's judgment dismissing count X is reversed and remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed and remanded in part for further proceedings not inconsistent with this opinion.

DRUCKER and ENGLISH, JJ., concur.