(No. 48943.

ROBERT I. STEINBERG, Appellee, v. CHICAGO MEDICAL SCHOOL, Appellant.

*Opinion filed December 12, 1977.*

322

324

326

Foran, Wiss and Schultz, of Chicago (Thomas A. Foran, Robert E. Wiss, and Ian H. Levin, of counsel), for appellant.

Larry D. Drury, of Chicago, for appellee.

MR. JUSTICE DOOLEY delivered the opinion of the court:

Robert Steinberg received a catalog, applied for admission to defendant, Chicago Medical School, for the academic year 1974-75, and paid a $15 fee. He was rejected. Steinberg filed a class action against the school claiming it had failed to evaluate his application and those of other applicants according to the academic criteria in the school's bulletin. According to the complaint, defendant used nonacademic criteria, primarily the ability of the applicant or his family to pledge or make payment of large sums of money to the school.

The 1974-75 bulletin distributed to prospective students contained this statement of standards by which applicants were to be evaluated:

> "Students are selected on the basis of scholarship, character, and motivation without regard to race, creed, or sex. The student's potential for the study and practice of medicine will be evaluated on the basis of academic achievement, Medical College Admission Test results, personal appraisals by a pre-professional advisory committee or individual instructors, and the personal interview, if requested by the Committee on Admissions."

Count I of the complaint alleged breach of contract; count II was predicated on the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261 *et seq.*) and the Uniform Deceptive Trade

Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 311 *et seq.*); count III charged fraud; and count IV alleged unjust enrichment. This was sought to be brought as a class action. Accordingly, there were the customary allegations common to such an action.

The trial court dismissed the complaint for failure to state a cause of action. The appellate court reversed as to count I, the contract action, and permitted it to be maintained as a limited class action. It affirmed the circuit court's dismissal of the remaining counts II, III, and IV. 41 Ill. App. 3d 804.

That the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261 *et seq.*) is inapplicable is patent from the title of the Act: "An Act to protect consumers and borrowers and business-men against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ***." A "consumer" is "any person who purchases or contracts for the purchase of merchandise ***." (Ill. Rev. Stat. 1973, ch. 121½, par. 261(e).) Obviously, plaintiff and those whom he represents were not consumers. The Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 311 *et seq.*) is limited to goods or services. It is not relevant.

In equity a constructive trust may be imposed to redress unjust enrichment where there is either actual fraud or implied fraud resulting from a fiduciary relationship. (*Hofert v. Latorri* (1961), 22 Ill. 2d 126, 130; *Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 494.) Here there is no fiduciary relationship to support a constructive trust and the fraud charges are subsumed in count III. Accordingly, we affirm the appellate court's dismissal of counts II and IV.

The real questions on this appeal are: Can the facts support a charge of breach of contract? Is an action predicated on fraud maintainable? Is this a proper class-

action situation?

On motion to dismiss we accept as true all well-pleaded facts. (*Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 96.) Count I alleges Steinberg and members of the class to which he belongs applied to defendant and paid the $15 fee, and that defendant, through its brochure, described the criteria to be employed in evaluating applications, but failed to appraise the applications on the stated criteria. On the contrary, defendant evaluated such applications according to monetary contributions made on behalf of those seeking admission.

A contract, by ancient definition, is "an agreement between competent parties, upon a consideration sufficient in law, to do or not to do a particular thing." *People v. Dummer* (1916), 274 Ill. 637, 640.

An offer, an acceptance (*Milanko v. Jensen* (1949), 404 Ill. 261, 266; *Geary v. Great Atlantic & Pacific Tea Co.* (1937), 366 Ill. 625, 627; *Dick v. Halun* (1931), 344 Ill. 163, 165-66; Restatement (Second) of Contracts secs. 19, 22 (Tent. Draft No. 1, 1964)), and consideration (*Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 265; *Green v. Ashland Sixty-Third State Bank* (1931), 346 Ill. 174, 178) are basic ingredients of a contract. Steinberg alleges that he and others similarly situated received a brochure describing the criteria that defendant would employ in evaluating applications. He urges that such constituted an invitation for an offer to apply, that the filing of the applications constituted an offer to have their credentials appraised under the terms described by defendant, and that defendant's voluntary reception of the application and fee constituted an acceptance, the final act necessary for the creation of a binding contract.

This situation is similar to that wherein a merchant advertises goods for sale at a fixed price. While the

advertisement itself is not an offer to contract, it constitutes an invitation to deal on the terms described in the advertisement. (1 A. Corbin, Contracts sec. 25 (1950); Restatement (Second) of Contracts sec. 25, comment *b*, illustration 1, and comment *f* (Tent. Draft No. 1, 1964); *O'Keefe v. Lee Calan Imports, Inc.* (1970), 128 Ill. App. 2d 410; *Montgomery Ward & Co. v. Johnson* (1911), 209 Mass. 89, 95 N.E. 290; *Lovett v. Frederick Loeser & Co.* (1924), 124 Misc. 81, 207 N.Y.S. 753; *Ehrlich v. Willis Music Co.* (1952), 93 Ohio App. 246, 113 N.E.2d 252, 51 Ohio Op. 8.) Although in some cases the advertisement itself may be an offer (see *Lefkowitz v. Great Minneapolis Surplus Store, Inc.* (1957), 251 Minn. 188, 86 N.W.2d 689), usually it constitutes only an invitation to deal on the advertised terms. Only when the merchant takes the money is there an acceptance of the offer to purchase.

Here the description in the brochure containing the terms under which an application will be appraised constituted an invitation for an offer. The tender of the application, as well as the payment of the fee pursuant to the terms of the brochure, was an offer to apply. Acceptance of the application and fee constituted acceptance of an offer to apply under the criteria defendant had established.

Consideration is a basic element for the existence of a contract. (*Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 265; *Green v. Ashland Sixty-Third State Bank* (1931), 346 Ill. 174, 178.) Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract. (*Green v. Ashland Sixty-Third State Bank* (1931), 346 Ill. 174, 178.) The application fee was sufficient consideration to support the agreement between the applicant and the school.

Defendant contends that a further requisite for contract formation is a meeting of the minds. But a

subjective understanding is not requisite. It suffices that the conduct of the contracting parties indicates an agreement to the terms of the alleged contract. (Restatement (Second) of Contracts sec. 19, comment *c,* sec. 21 (Tent. Draft No. 1, 1964).) Williston, in his work on contracts, states:

> "In the formation of contracts it was long ago settled that secret intent was immaterial, only overt acts being considered in the determination of such mutual assent as that branch of the law requires. During the first half of the nineteenth century there were many expressions which seemed to indicate the contrary. Chief of these was the familiar cliche, still reechoing in judicial dicta, that a contract requires the 'meeting of the minds' of the parties." (1 Williston, Contracts sec. 22, at 46-48 (3d ed. 1957).)

Here it would appear from the complaint that the conduct of the parties amounted to an agreement that the application would be evaluated according to the criteria described by defendant in its literature.

Defendant urges *People ex rel. Tinkoff v. Northwestern University* (1947), 333 Ill. App. 224, controls. There the plaintiff alleged that since he met the stated requirement for admission, it was the obligation of the university to accept him. Plaintiff was first rejected because he was 14 years of age. He then filed a *mandamus* action, and subsequently the university denied his admission, apparently because of the court action. That decision turned on the fact that Northwestern University, a private educational institution, had reserved in its charter the right to reject any applicant for any reason it saw fit. Here, of course, defendant had no such provision in its charter or in the brochure in question. But, more important, Steinberg does not seek to compel the school to admit him. The substance of his action is that under the circumstances it was defendant's duty to appraise his application and those of the others on the terms defendant represented.

A medical school is an institution so important to life in society that its conduct cannot be justified by merely stating that one who does not wish to deal with it on its own terms may simply refrain from dealing with it at all.

As the appellate court noted in a recent case in which this defendant was a party:

"A contract between a private institution and a student confers duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced. (*People ex rel. Cecil v. Bellevue Hospital Medical College* (N.Y. 1891), 60 Hun. 107, 14 N.Y.S. 490; *Baltimore University v. Colton* (1904), 98 Md. 623, 57 A. 14; *State ex rel. Nelson v. Lincoln Medical College* (1908), 81 Neb. 533, 116 N.W. 294.)" *DeMarco v. University of Health Sciences* (1976), 40 Ill. App. 3d 474, 480.

Here our scope of review is exceedingly narrow. Does the complaint set forth facts which could mean that defendant contracted, under the circumstances, to appraise applicants and their applications according to the criteria it described? This is the sole inquiry on this motion to dismiss. We believe the allegations suffice and affirm the appellate court in holding count I stated a cause of action.

Count III alleges that, with intent to deceive and defraud plaintiffs, defendant stated in its catalogs it would use certain criteria to evaluate applications; that these representations were false in that applicants were selected primarily for monetary considerations; that plaintiffs relied on said representations and were each thereby induced to submit their applications and pay $15 to their damage.

These allegations support a cause of action for fraud. Misrepresentation of an existing material fact coupled with scienter, deception, and injury are more than adequate. (*Majewski v. Gallina* (1959), 17 Ill. 2d 92, 99; 19 Ill. L. &

Prac. *Fraud* sec. 3 (1956).) *Roth v. Roth* (1970), 45 Ill. 2d 19, 23, succinctly stated when a misrepresentation may constitute fraud:

"A misrepresentation in order to constitute a fraud must consist of a statement of material fact, false and known to be so by the party making it, made to induce the other party to act, and, in acting, the other party must rely on the truth of the statement. (*Roda v. Berko,* 401 Ill. 335.)"

Plaintiff's allegations meet the test of common law fraud.

Not to be ignored is defendant's *modus operandi* as described in *DeMarco v. University of Health Sciences* (1976), 40 Ill. App. 3d 474, 481-82:

"An analysis of those exhibits shows that in 1970, at least 64 out of 83 entering students had pledges made in their behalves totalling $1,927,900. The pledges varied in amounts from $1400 to $100,000 and averaged $30,123. In 1971, at least 55 out of 83 students had pledges made in their behalves totalling $1,893,000. The pledges varied in amounts from $3000 to $100,000 and averaged $34,418. In 1972, at least 73 out of an entering class of 92 had contributions made in their behalves totalling $3,111,000. The pledges varied in amounts from $20,000 to $100,000 and averaged $42,603. In 1973, at least 78 out of 91 students had contributions made in their behalves totalling $3,749,000. The pledges varied in amounts from $10,000 to $100,000 and averaged $48,064. In addition, there were amounts pledged and partial payments made for students who did not enter or dropped out shortly after entering."

It is immaterial here that the misrepresentation consisted of a statement in the medical school catalog, referring to future conduct, that "the student's potential

for the study and practice of medicine will be evaluated on the basis of academic achievement, Medical College Admission Test results, personal appraisals by a pre-professional advisory committee or individual instructors, and the personal interview, if requested by the Committee on Admissions." We concede the general rule denies recovery for fraud based on a false representation of intention or future conduct, but there is a recognized exception where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud. (*Willis v. Atkins* (1952), 412 Ill. 245, 260; *Roda v. Berko* (1948), 401 Ill. 335, 340; *Carroll v. First National Bank* (7th Cir. 1969), 413 F.2d 353, 358; *Howard v. Howe* (7th Cir. 1932), 61 F.2d 577, 579.) Such is the situation here.

Here an action for fraud is consistent with the recognition of a contract action. The law creates obligations "on the ground that they are dictated by reason and justice." (*People v. Dummer* (1916), 274 Ill. 637, 641.) The right to recover on a "constructive contract," although phrased in contract terminology, is not based on an agreement between parties but is an obligation created by law. "Such contracts are contracts merely in the sense that [they] *** are created and governed by the principles of equity." (*People v. Dummer* (1916), 274 Ill. 637, 642.) So here the facts of this situation mandate that equity imply an obligation by the defendant. We note this since the circumstances before us justify a contract action, as well as a fraud action, or, in the event no contract in fact can be proven, an action on an implied-in-law obligation of the defendant.

What about the propriety of a class action here? A class action is a potent procedural vehicle. Under its terms claims by multiple persons can be decided without the necessity of the appearance of each. A vindication of the rights of numerous persons is possible in a single action

when for many reasons individual actions would be impracticable. (*Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 347; *Smyth v. Kaspar American State Bank* (1956), 9 Ill. 2d 27, 44.) The origins of this invention of equity, according to Professor Chafee (Some Problems of Equity 157 *et seq.*), go back almost 300 years. Its purpose has been described as "to enable it [equity] to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable." *Hansberry v. Lee* (1940), 311 U.S. 32, 41, 85 L. Ed. 22, 27, 61 S. Ct. 115, 118.

Notwithstanding the importance of this litigation tool, until the very recent enactment of a law, Illinois had no statute or rule of procedure pertaining to class actions other than a provision of the Civil Practice Act relating to compromise or dismissal of class actions (Ill. Rev. Stat. 1975, ch. 110, par. 52.1). Hence, all class action questions were determined by case law. (Tornquist, *Roadmap to Illinois Class Actions,* 5 Loy. Chi. L.J. 45, 53 (1974); Forde, *Class Actions In Illinois: Toward A More Attractive Forum For This Essential Remedy,* 26 DePaul L. Rev. 211 (1977).) According to one law review (Comment, *Illinois: A Common Law Approach,* 68 Nw. U.L. Rev. 1094 (1974)), Illinois, as of 1974, was one of but seven States relying on the common law to determine class actions. See also Fox, *Representative Actions and Proceedings,* 1954 U. Ill. L.F. 94, 110; Gordon, *The Common Question Class Suit Under the Federal Rules and in Illinois,* 42 Ill. L. Rev. 518, 532 (1947); Forde, *Class Actions In Illinois: Toward A More Attractive Forum For This Essential Remedy,* 26 DePaul L. Rev. 211 (1977); Comment, 4 J. Mar. J. Prac. & Proc. 217, 243 (1971).

There was substantial conflict in Illinois decisions as to the requisites of such actions. As was pointed out in *Gaffney v. Shell Oil Co.* (1974), 19 Ill. App. 3d 987:

"One line of authority holds that there can be no such action: *Newberry Library v. Board of Education* (1944), 387 Ill. 85, 55 N.E.2d 147; *Peoples Store of Roseland v. McKibbin* (1942), 379 Ill. 148, 39 N.E.2d 995; *Heller v. Fergus Ford, Inc.* (1973), 15 Ill. App. 3d 868, 305 N.E.2d 352; *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, 287 N.E.2d 519. A second line of authority holds that multiple claims for damages in varying amounts which have to be separately adjudicated does not bar a class suit if the other requirements of such a suit are present. (*Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698; *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 155 N.E.2d 595; *Lee v. City of Casey* (1915), 269 Ill. 604, 109 N.E. 1062; *Rodriguez v. Credit Systems Specialists, Inc.* (1974), 17 Ill. App. 3d 606, 308 N.E.2d 342; *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 305 N.E.2d 236; *Hagerty v. General Motors Corp.* (1973), 14 Ill. App. 3d 33, 302 N.E.2d 678.)" 19 Ill. App. 3d 987, 989-90.

The legislature recently enacted section 57.2 of the Civil Practice Act (Pub. Act 80–809), setting forth the prerequisites for the maintenance of class actions. It provides:

"Prerequisites for the Maintenance of a Class Action.

(a) An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy."

Since this statute is procedural in nature, it is applicable to pending litigation. (*Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 347; *Board of Education v. City of Chicago* (1949), 402 Ill. 291, 296; *Weil-McLain Co. v. Collins* (1946), 395 Ill. 503, 508.) Accordingly, we shall measure this action in terms of the statute.

That the class here is so numerous that joinder of all parties would be impracticable is obvious if for no reason other than economics. More than that, multiple separate claims would be an imposition on all litigants as well as the courts.

The statute simplifies with this language, "[t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members," what had been a problem under Illinois case law. A community of interest in both the subject matter and the remedy was the original requisite. (*Peoples Store v. McKibbin* (1942), 379 Ill. 148.) The teaching was nullified in *Newberry Library v. Board of Education* (1944), 387 Ill. 85, but revived in *Smyth v. Kaspar American State Bank* (1956), 9 Ill. 2d 27, 44, and particularly in *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538.

The problem with the "community of interest" concept was its lack of structure. One author (Comment, *Illinois: A Common Law Approach,* 68 Nw. U.L. Rev. 1094) observed:

"Illinois decisions are replete with language to the effect that maintenance of a class action requires a community of interest in both the subject matter of the litigation and the remedy. As one court explained:
[T]he test to be applied is the existence of a community of interest in the subject matter and a community of interest in the remedy among all who make up the purported class. Factors to be con-

> sidered in applying this test are: whether the claims
> of all members of the class share a common question
> of law and fact, such as the existence of a common
> fund from which relief can be given; whether the
> causes of action of the members of the class arise
> from the same transaction; whether one party can
> adequately represent the rights and interests of all
> other members of the purported class; whether the
> number of possible class members renders separate
> litigation impossible or impractical; and whether
> there exists a purely equitable cause of action.
> [*Moseid v. McDonough* (1968), 103 Ill. App. 2d 23,
> 27-28.]
>
> As this mere listing of "relevant factors" suggests, Illinois
> case law provides little guidance as to the definitive
> requirements for maintaining a class action." (Footnotes
> omitted.)

In view of the statute, it would be idle to discuss "community of interest" of both the subject matter and relief, although this case obviously withstands such a test.

So long as there are questions of fact or law common to the class and these predominate over questions affecting only individual members of such class, the statutory requisite is met. It would be needless to consider the variations in our case law on this aspect. With the advent of the statute many of the prior decisions have become corpses.

It is, of course, well established that the elemental determination that some members of a class are not entitled to relief because of some particular factor will not bar the class action. *Rosen v. Village of Downers Grove* (1960), 19 Ill. 2d 448, 456.

Another requisite of the statute concerns adequate protection of the interest of the class by the representative party. Absentee class members must be so represented that their rights will receive adequate protection. Here plaintiffs' interests are not antithetical to those of other members of the class, but are the same. This certainly does

not appear to be a collusive or friendly action. As far as we can determine, representation by the plaintiff will afford protection to other members of the class who must be afforded due process. (*Hansberry v. Lee* (1940), 311 U.S. 32, 42, 85 L. Ed. 22, 27, 61 S. Ct. 115, 118; *Eisen v. Carlisle & Jacquelin* (2d Cir. 1968), 391 F.2d 555, *rev'd on other grounds* (1974), 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140.) Due process includes the requisite that the representative parties' "attorney must be qualified, experienced and generally able to conduct the proposed litigation." (*Eisen v. Carlisle & Jacquelin* (2d Cir. 1968), 391 F.2d 555, 562, *rev'd on other grounds* (1974), 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140.) These, of course, are matters which the circuit court can determine on a preliminary hearing.

Lastly, the facts we have considered make manifest that the final requirement of the statute, that a class action be an appropriate method for the fair and efficient adjudication of the controversy, is fulfilled.

Another area resolved by the statute has to do with the common-fund doctrine. The necessity of a common fund for a class action first appeared in *Peoples Store v. McKibbin* (1942), 379 Ill. 148, a taxpayer's action to enjoin collection of taxes on sales to exempt vendors. But there none of the members of the class except plaintiff had paid under protest, so that taxes on which refunds were sought had been deposited in the general fund of the State. Again in *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, an action on behalf of a large class of purchasers of allegedly defective Ford products, the appellate court held a common fund was a necessity. But in *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, *appeal dismissed* (1975), 60 Ill. 2d 529, a class action on behalf of borrowers from the bank alleging a violation of the Interest Act (Ill. Rev. Stat. 1971, ch. 74, pars. 9, 10), the appellate court held that a sequestered fund was not

required. Defendant had urged that there was no common fund since any moneys owing plaintiffs had been commingled with other bank assets. "The liability or wrongdoing creates the fund, and whatever is taken wrongfully constitutes the fund." (15 Ill. App. 3d 784, 801; see also *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, allowing a class action under the Consumer Fraud Act (Ill. Rev. Stat. 1971, ch. 121½, par. 262).) The decisional law on the question of a common fund is superseded by the statute. There is no longer a requisite of a common fund.

That one count is based on fraud does not prohibit a class action. As we have already noted, the facts here would be such that equity would view this as an obligation imposed by law upon the defendant. This is another area clarified by the statute. One case prohibited a class action based upon fraud because individual proof was required. It was *Langson v. Goldberg* (1940), 373 Ill. 297, a bondholder's action for fraud in the signing of waivers of certain covenants involving repayment of principal. Yet in *Kimbrough v. Parker* (1951), 344 Ill. App. 483, 486, a class action was allowed on behalf of 3,300 participants in an allegedly fraudulent puzzle contest. And very recently in *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, a class action was permitted under the Consumer Fraud Act (Ill. Rev. Stat. 1971, ch. 121½, par. 261 *et seq.*).

These cases revert to the conflict between prior Illinois decisions noted in *Gaffney* on whether a class action will be barred if each member has to make proof of its claim.

No doubt there will be situations where there may be questions peculiar to certain members of the class. However, once there is a determination that there exists a question of fact or law common to the class and that this predominates the question affecting only individual mem-

bers, the statute is satisfied.

In those cases where certain questions peculiar to some but not all members of the class arise, various procedures may be employed. The pathway has been cut by Federal courts. Illustrative are such actions for violations of the antifraud provisions of Federal securities legislation, particularly those involving section 17(a) of the Securities Act of 1933 (15 U.S.C. sec. 77q(a)), section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. sec. 78j(b)), and SEC Rule 10b—5.

In *Korn v. Franchard Corp.* (2d Cir. 1972), 456 F.2d 1206, where multiple cases are collected it is said:

"In fraud or 10b—5 cases decided in recent years, various rules, mechanisms, or presumptions have been put forward for mitigating the problem of showing reliance: Split trials for individual proof on reliance (Green v. Wolf Corp., *supra,* 406 F.2d at 291); inferring from the materiality of the misstatement that a reasonable investor would have relied; stressing general reliance on a common course of conduct over a period of time; dispensing with or minimizing the need to prove individual reliance in cases of nondisclosure; using the test, in instances of omission, of whether the claimant would have been influenced to act differently, if the undisclosed fact had been made known, than he in fact did.

We do not cite these formulations to tell the District Court that it should or must follow any of them. Our purpose is only to show that, though many paths have been taken, the federal courts have concurred in adopting procedures and rules which can reduce the difficulties of showing individual reliance. More specifically, in several of these decisions the courts, faced with our problem, have agreed in comparable class suit situa-

tions that the common questions predominate and the requirement of Rule 23(b)(3) is satisfied." (Footnotes omitted.) 456 F.2d 1206, 1212-13.

See also *Kahan v. Rosenstiel* (3d Cir. 1970), 424 F.2d 161, 173-74, *cert. denied* (1970), 398 U.S. 950, 26 L. Ed. 2d 290, 90 S. Ct. 1870; *Mills v. Electric Auto-Lite Co.* (1970), 396 U.S. 375, 24 L. Ed. 2d 593, 90 S. Ct. 616.

An Illinois court determining that an essential element of the proof is common to only certain members of the class could order separate trials on that particular issue. (Ill. Rev. Stat. 1975, ch. 110, par. 23.) Or the class could be broken into various subclasses, as the Federal decisions point out. The class action, however, is not to be dismissed because of these differences in elements of proof between members of the class.

Who constitutes the class Steinberg represents? The appellate court limited the class to those who applied to the medical school in the same year as Steinberg on the basis that the complaint was predicated on the standards described in the 1974-75 catalog. However, the complaint makes allegations broad enough to state a cause of action for all who applied and paid a fee predicated on a brochure containing the alleged misrepresentations. We hold that each of these can be members of this class. The commencement of the class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit continued as a class action. *American Pipe & Construction Co. v. Utah* (1974), 414 U.S. 538, 554, 38 L. Ed. 2d 713, 727, 94 S. Ct. 756, 766.

On remand the trial court should, by a preliminary hearing, determine the following: (a) the proper members of the class; (b) whether the plaintiff will be able to adequately represent the class so that there will be no denial of due process; (c) whether notice is required to

other members of the class and the character of such notice; and (d) other such pretrial findings proper to class action litigation.

The appellate court was correct in affirming the dismissal of counts II and IV of plaintiff's complaint and in reversing the dismissal of count I of the complaint. It erred in affirming the dismissal of count III and abbreviating the class represented by plaintiff.

The judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court of Cook County is affirmed in part and reversed in part. The cause is remanded to the circuit court with directions to proceed in a manner not inconsistent with this opinion.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.*